In the United States District Court
for the Northern District of Indiana
Lafayette Division

| | |
|---|---|
| CHRISTOPHER ANDERSON,<br><br>*On behalf of himself and those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>HIGH ENERGY PIZZA, LLC d/b/a DOMINO'S PIZZA, and JEFF STEGEN<br><br>Defendants. | CASE NO. 4:22-cv-00041 |

Individual and FLSA Collective Action Complaint

1.   Christopher Anderson ("Plaintiff"), on behalf of himself and all similarly-situated individuals, brings this action against Defendants High Energy Pizza, LLC d/b/a Domino's Pizza, and Jeff Stegen ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum and overtime wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.  Plaintiff also brings an individual claim under the Indiana Wage Payment Act ("WPA"), Ind. Code 22-2-5.

2.   Defendants operate numerous Domino's Pizza franchises ("High Energy Domino's" stores), including at least nine Domino's Pizza franchises in Indiana.

1

3. Defendants repeatedly and willfully violated the Fair Labor Standards Act and law by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage wages for all hours worked.

4. Defendants maintain a policy and practice of underpaying their delivery drivers in violation of the FLSA.

5. All delivery drivers at the High Energy Domino's stores, including Plaintiff, have been subject to the same or similar employment policies and practices, including policies and practices with respect to wages and reimbursement for out-of-pocket expenses.

6. Plaintiff brings this action on behalf of himself and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

7. Plaintiff also brings this action on behalf of himself individually, to remedy violations of Ind. Code 22-2-5.

**Jurisdiction and Venue**

8. Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

9. Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Indiana state law claims.

10. Venue in this Court is proper under 28 U.S.C. § 1391(b) because Plaintiff resides in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## Parties

### Plaintiff

### Christopher Anderson

11. Plaintiff Christopher Anderson is a resident of Lafayette, Indiana and, at all times material herein, Plaintiff worked within the boundaries of the Northern District of Indiana. Specifically, Plaintiff was employed as a delivery driver at one of the High Energy Domino's locations in Lafayette, Indiana.

12. Plaintiff was an "employee" of the Defendants as defined in the FLSA and Ind. Code. 22-2-5.

13. Plaintiff has given written consent to join this action. (See Exhibit 1 attached hereto)

### Defendants

### High Energy Pizza, LLC d/b/a Domino's Pizza

14. Defendant High Energy Pizza, LLC is a foreign limited liability company authorized to do business under the laws of Indiana.

15. High Energy Pizza, LLC is the corporate entity that appears on Plaintiff's paystubs for the work he completed for Defendants.

16. High Energy Pizza, LLC was founded by Defendant Jeff Stegen.

17. High Energy Pizza, LLC operates the High Energy Domino's stores.

18. High Energy Pizza, LLC is headquartered in 538 S National Ave, Springfield, MO 65802.

19. High Energy Pizza, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

20. High Energy Pizza, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

21. At all relevant times, High Energy Pizza, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

22. High Energy Pizza, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and Ind. Code 22-2-5.

23. At all relevant times, High Energy Pizza, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

24. High Energy Pizza, LLC's gross revenue exceeds $500,000 per year.

**Jeff Stegen**

25. Defendant Jeff Stegen is an owner and operator of High Energy Pizza, LLC and the High Energy Domino's stores.

26. Jeff Stegen is individually liable to High Energy Domino's delivery drivers under the definitions of "employer" set forth in the FLSA and Ind. Code 22-2-5, because he owns and operates the High Energy Domino's stores, serves as a manager and/or member of High Energy Pizza, LLC, ultimately controls significant aspects of High Energy Pizza, LLC's day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

27. At all relevant times, by virtue of his role as owner and operator of High Energy Pizza, LLC, Jeff Stegen has had financial control over the operations at each of the High Energy Domino's stores.

28. At all relevant times, by virtue of his role as owner and operator of High Energy Pizza, LLC, Jeff Stegen has a role in significant aspects of High Energy Domino's stores' day-to-day operations.

29. At all relevant times, by virtue of his role as owner and operator of High Energy Pizza, LLC, Jeff Stegen has had control over High Energy Domino's stores' pay policies.

30. At all relevant times, by virtue of his role as owner and operator of High Energy Pizza, LLC, Jeff Stegen has had power over personnel and payroll decisions at the High Energy Domino's stores, including but not limited to influence of delivery driver pay.

31. At all relevant times, by virtue of his role as owner and operator of High Energy Pizza, LLC, Jeff Stegen has had the power to hire, fire, and discipline employees, including delivery drivers at High Energy Domino's stores.

32. At all relevant times, by virtue of his role as owner and operator of High Energy Pizza, LLC, Jeff Stegen has had the power to stop any illegal pay practices that harmed delivery drivers at High Energy Domino's stores.

33. At all relevant times, by virtue of his role as owner and operator of High Energy Pizza, LLC, Jeff Stegen has had the power to transfer the assets and liabilities of High Energy Domino's stores.

34. Jeff Stegen has influence over how the High Energy Domino's stores can run more profitably and efficiently.

## Facts

### Class-wide Factual Allegations

35. During the relevant time period, Defendants have operated at least nine Domino's Pizza stores in Indiana as well as stores in other states including Missouri.

36. The primary function of the High Energy Domino's stores is to sell pizza and other food items to customers, whether they carry out or have their food delivered.

37. All of the High Energy Domino's stores employ delivery drivers.

38. Plaintiff seeks to represent are current and former delivery drivers employed by Defendants at the High Energy Domino's stores.

39. All delivery drivers employed at the High Energy Domino's stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

40. At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage or slightly above minimum wage for the hours they worked for Defendants.

41. Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

42. Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, cell phone

costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

43. Pursuant to such requirements, Plaintiff and other similarly situated delivery drivers purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing charges, and incur cell phone and data charges all for the primary benefit of Defendants.

44. None of the High Energy Domino's stores track or record their delivery drivers' actual expenses.

45. None of the High Energy Domino's stores reimburse delivery drivers for their actual expenses.

46. None of the High Energy Domino's stores reimburse delivery drivers at the IRS standard business mileage rate.

47. None of the High Energy Domino's stores reimburse delivery drivers at a reasonable approximation of the delivery drivers' expenses.

48. Plaintiff and similarly situated delivery drivers receive a per-mile reimbursement payment that is less than the IRS standard business mileage rate for each mile they drive while completing deliveries for High Energy Domino's stores.

49. For example, Plaintiff received $.35 per delivery for every mile he drove while making deliveries.

50. The delivery drivers' reimbursement rate did not change based on the car they drove.

51. The delivery drivers' reimbursement rate did not change based on the repair or maintenance charges they incurred.

52.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

   a. 2019: 58 cents/mile
   b. 2020: 57.5 cents/mile
   c. 2021: 56 cents/mile
   d. 2022: 58.5 cents/mile up to July 1, 2022
   e. 2022: 62.5 cents/mile after July 1, 2022

53.     The delivery drivers at High Energy Domino's stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

54.     As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA.

55.     At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at the High Energy Domino's stores.

56.     All of Defendants' delivery drivers had similar experiences to that of Plaintiff. They completed similar job duties, were subject to the same reimbursement policy; received similar reimbursement payments; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

57.     Regardless of the precise amount of the reimbursement formula at any given point in time, Defendants' reimbursement formula has resulted in systematic violations of the minimum wage provisions of the FLSA.

58.     Regardless of the precise amount of the reimbursement formula at any given point in time, Defendants' reimbursement formula has resulted in systematic

violations of the overtime provisions of the FLSA in weeks where a driver worked hours in excess of forty (40) in a single workweek ("Overtime Hours").

59. Because Defendants paid their delivery drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

60. Defendants' delivery drivers regularly worked Overtime Hours, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to deny drivers one and one-half times their regular rate of pay for their Overtime Hours. *See* 29 C.F.R. § 531.35.

61. Defendants have willfully failed to pay the federal minimum wage and overtime premiums to Plaintiff and similarly situated delivery drivers at the High Energy Domino's stores.

### Plaintiff's Individual Factual Allegations

62. Plaintiff worked at a High Energy Domino's store in Lafayette from August 2021 to January 2022.

63. Plaintiff was subject to the same or substantially similar compensation terms as other drivers for the High Energy Domino's stores.

64. Plaintiff was paid an hourly rate of $8.00 per hour, or only $.75 more than the federal minimum wage rate of $7.25.

65. Plaintiff regularly worked Overtime Hours.

66. Plaintiff was reimbursed on a per mile basis when completing deliveries for Defendants.

67. Plaintiff was reimbursed approximately $.35 per mile.

68. Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

69. Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, and other equipment necessary for delivery drivers to complete their job duties.

70. Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, and incur cell phone and data charges all for the primary benefit of Defendants.

71. Defendants did not track the actual expenses incurred by Plaintiff.

72. Defendants did not reimburse Plaintiff based on his actual delivery-related expenses.

73. Plaintiff was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

74. Defendants did not reasonably approximate the expenses incurred by Plaintiff while he completed deliveries for Defendants.

75. During Plaintiff's employment with Defendants, Defendants failed to adequately reimburse Plaintiff for automobile and other job-related expenses.

76. Plaintiff regularly made approximately 3 to 4 deliveries per hour during the hours he worked as a delivery driver.

77. Plaintiff regularly drove approximately 4.1 miles per delivery.

78. In 2021, for example, the IRS business mileage reimbursement has been $.56 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Defendants reimbursed Plaintiff $.35 per mile. Using the 2021 IRS standard business mileage rate as a reasonable approximation of his expenses, Defendants' policy under-reimbursed Plaintiff by $.21 per mile ($.56 - $.35). Considering Plaintiff's estimate of about 4.1 average miles per delivery, Defendants under-reimbursed him by about $.86 per delivery. Considering Plaintiff's estimate of approximately 3 deliveries per hour, Defendants under-reimbursed Plaintiff by about $2.58 per hour. As a result, Plaintiff was not paid the federally mandated minimum wage of $7.25 an hour.

79. As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff minimum wage as required by law.

80. Approximately 5 weeks before Plaintiff resigned his employment, Plaintiff was promoted to the position of "Shift Runner" and given a raise to $11.00 an hour.

81. Despite this promotion and raise, Defendants never paid Plaintiff his agreed upon rate of $11.00 an hour for his last 5 weeks of employment.

82. During his last 5 weeks of employment when Defendants paid Plaintiff the wrong hourly rate, Plaintiff worked in excess of forty (40) hours in a single workweek.

83. As a result of Defendants' failure to pay Plaintiff the hourly rate of $11.00 per hour, Defendants violated the IWPS.

84. As a result of Defendants' failure to pay Plaintiff the proper overtime premium of an additional $5.50 per overtime hour during his last 5 weeks of employment, Defendants violated the overtime provisions of the FLSA.

## Collective Action Allegations

85. Plaintiff brings the First Count on behalf of himself and all similarly situated current and former delivery drivers employed at the High Energy Domino's stores owned, operated, and controlled by Defendants in Indiana, during the three years prior to the filing of this Collective Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

86. At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses.

87. Defendants' unlawful conduct is pursuant to a corporate policy or practice.

88. Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and the overtime premium for Overtime Hours and to fully reimburse for "tools of the trade."

89. Defendants' unlawful conduct has been widespread, repeated, and consistent.

90. The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

91. The FLSA Collective members are readily identifiable and ascertainable.

**Causes of Action**

### Count 1
**Failure to Pay Minimum and Overtime Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

92. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

93. Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

94. Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive the overtime premium for all hours worked in excess of forty (40) in a single workweek.

95. Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

96. Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

97. By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

98. Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage and overtime premiums as required by law.

99. As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

## Count 2
### Failure to Pay Earned Wages – Ind. Code 22-2-5
**(On Behalf of Plaintiff)**

100. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

101. During the relevant time period, Defendants have violated and are violating the provisions of Indiana Code §§ 22-2-5 et seq. by failing to pay Plaintiff his earned wages.

102. Defendants' refusal to timely pay Plaintiff his earned wages was in bad faith.

## Count 3
### Failure to Pay Overtime Wages - Fair Labor Standards Act
**(On Behalf of Plaintiff)**

103. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

104. During the relevant time period, Defendants have violated and are violating the provisions of 29 U.S.C. § 207 by failing to comply with the overtime requirements of the FLSA.

105. Defendants acted intentionally, willfully, or with reckless disregard to the rights of Plaintiff as protected by the FLSA.

**WHEREFORE**, Plaintiff Christopher Edwards prays for the following relief:

A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an

opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and his counsel to represent the collective action members.

B.	Unpaid minimum wages, unpaid overtime wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.	An award of prejudgment and post-judgment interest.

D.	An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

E.	Such other legal and equitable relief as the Court deems appropriate.


Respectfully submitted,


Respectfully Submitted,

s/Robert J. Hunt
Robert J. Hunt, (#30686-49)
Robert F. Hunt (#7889-84)
The Law Office of Robert J. Hunt, LLC
1905 South New Market Street, Ste 168
Carmel, Indiana 46032
Telephone:	(317) 743-0614
Facsimile:	(317) 743-0615
E-Mail:	rob@indianawagelaw.com
	rfh@indianawagelaw.com


Attorneys for Plaintiff